# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**FIRST RESPONSE METERING, LLC,**

    **Plaintiff,**

  v.

**CITY OF WILMINGTON,**

    **Defendant.**

Case No. 1:20-cv-329
Judge Sarah D. Morrison

## OPINION AND ORDER

This matter is before the Court on Defendant City of Wilmington's Motion for Summary Judgment. (Mot., ECF No. 26.) Plaintiff First Response Metering, LLC opposed (Opp., ECF No. 43), the City replied (Reply, ECF No. 47), and the Motion is ripe for consideration. For the reasons set forth below, the Motion is **GRANTED**.

### I.    FACTUAL BACKGROUND

On December 20, 2018, the City contracted with Global Water Management, LLC d/b/a Fathom through a Technology Services Agreement ("Agreement") to replace its water metering infrastructure (the "Project"). (Schaffer Aff. ¶¶ 3, 4, ECF No. 27; ECF No. 27-1.) The Project was to include an automated advanced metering infrastructure ("AMI"), meter data management, and a customer information solution, which would have fully automated the City's water metering reading and billing system. (Schaffer Aff. ¶¶ 3, 18, 22.)

A.     **Project Pricing and Financing**

A fee schedule attached to the Agreement for the Project states the "total Implementation Fee shall be $3,332,328." (ECF No. 27-1, PageID 268.) The fee schedule does not contain an itemized breakdown of the $3,332,328, though Fathom did provide the City with a slightly higher pricing table that contains an itemized breakdown in its request for proposal. (ECF No. 27-2.)

The Project was financed through a municipal finance lease. (Schaffer Aff. ¶ 9; ECF No. 27-3.) After the City and Fathom entered into the Agreement, they also entered into a Master Equipment Lease/Purchase Agreement, effective January 23, 2019. (Schaffer Aff. ¶ 10; ECF No. 27-3.) On the same effective date, Fathom assigned its rights under the Lease to Bank of America, NA, and Bank of America became the Lessor. (Schaffer Aff. ¶ 11; ECF No. 27-4.) Bank of America was then required to distribute Lease proceeds of approximately $3.4 million into a segregated escrow account for the purpose of making payments for the Project as they became due. (ECF No. 27-3, PageID 290.)

B.     **Fathom's November 9 Email and the City's Disbursements**

On November 9, 2019, Fathom sent an email to the City stating, "Despite a massive effort this year, we have not been able to secure an investment or additional debt to save our business. Our focus has now turned to provide an exit for our clients and to settle as many of the outstanding obligations as possible." (ECF No. 27-6.) Fathom ceased work on the Project. (Schaffer Aff. ¶ 18.) At that time, approximately 70% of the water meters had been installed, but software

installation, training, and other services related to the Project had not been completed. (*Id.*)

Prior to receipt of the November 9 email and based on Fathom invoices, the City had approved seven disbursements from the Bank of America escrow account to Fathom totaling $2,748,961. (*Id.* ¶ 17; ECF Nos. 27-7–27-13.) These disbursements took place from January 25, 2019 until October 24, 2019. (*Id.*)

The City received an eighth invoice from Fathom dated November 15, 2019 seeking $156,984.16 but the City did not approve the invoice given Fathom's message that its business was closing. (Schaffer Aff. ¶ 20; ECF No. 27-14.) The City's position is that Fathom materially breached the Agreement when it sent the November 9 email and that, not only was nothing else due to Fathom, the City had overpaid Fathom for the work completed. (Mot. PageID 220; Schaffer Aff. ¶¶ 21, 23–24; ECF No. 27-2.)

### C. First Response's Work and Affidavit

Fathom subcontracted with First Response to perform various tasks related to the Project. (ECF No. 45-1.) First Response began its work in October 2019 and finished on December 15, 2019. (ECF No. 21, PageID 161–83.) On March 11, 2020—approximately four months after the November 9 email—First Response's counsel executed an affidavit of claim under Ohio Revised Code § 1311.26 (the "Affidavit"). (*Id.* PageID 159.) The Affidavit states First Response "claims a lien upon the unpaid portion of the contract between" Fathom and the City for $148,500.16, which was the amount due for First Response's unpaid labor, work, and materials furnished. (*Id.*) First Response's counsel sent the Affidavit to various City officials on March 11

3

and recorded it with the Clinton County, Ohio Recorder on April 2. (*Id.* PageID 184–91.) The City did not pay First Response, and this litigation ensued.

## II. PROCEDURAL BACKGROUND

First Response filed its complaint in April 2020 and an amended complaint a few months later. (ECF Nos. 4, 14.) The City filed a motion to dismiss, arguing First Response had failed to state a claim and the Court lacked jurisdiction, which was briefed and denied. (ECF Nos. 15, 17, 18, 19.) First Response then filed a second amended complaint. (ECF No. 21.) Discovery is complete and the City's Motion is ripe for review.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## IV. ANALYSIS

First Response brings two claims against the City. (ECF No. 21.) In the first, First Response seeks to enforce a mechanic's lien and collect $148,500.16. (*Id.* ¶¶ 20–27.) In the second, First Response claims the City was unjustly enriched for the same amount. (*Id.* ¶¶ 28–32.)

### A. Mechanic's Lien (Count I)

The parties' dispute primarily concerns whether First Response complied with Ohio's statutory scheme governing mechanic's liens in public improvement projects.

Under Ohio Revised Code §§ 1311.25–1311.33, subcontractors involved in public improvement projects may file liens for unpaid labor and materials furnished against "public authorities," including "municipal corporation[s]," like the City. Ohio Rev. Code §§ 1311.25(A), (B); (*see* ECF No. 27-3, PageID 273.) A lien can be used by a subcontractor to protect payment due for work completed on, or materials provided to, a project. *See* Ohio Rev. Code § 1311.26. If a subcontractor complies

5

with the statute, it can recover money that is "due and unpaid" to the principal contractor. Ohio Rev. Code §§ 1311.26, 1311.32 ("the subcontractor . . . may, when the amounts are due, recover through the public authority . . . the whole or a *pro rata* amount of the subcontractor's . . . estimate, not exceeding in any case the balance due to the principal contractor"). In the context of a public project, the lien is against the funds owed to the principal contractor rather than against the public property. *See* Ohio Rev. Code §§ 1311.25–33.

> To establish the lien, a subcontractor must:
>
> serve the public authority an affidavit stating the amount due and unpaid for the labor and work performed and material furnished, when the last of the labor or work was performed and when the last of the material was furnished with all credits and setoffs thereon, and the post-office address of the claimant.

Ohio Rev. Code § 1311.26. The affidavit cannot be served more than 120 days after the performance of the last labor, work, or furnishing of the last material.[1] (*Id.*) Additionally, a subcontractor must "serve a notice of furnishing" on the "principal contractor whose contract with the public authority is the contract under which the subcontractor or material supplier is performing labor or work or furnishing materials" within 21 days after the subcontractor begins working on or supplying materials for the public improvement project unless the subcontractor is in privity of contract with the principal contractor. Ohio Rev. Code § 1311.261.

Upon receiving the affidavit from the subcontractor, the public authority "shall detain from the principal contractor or from the balance of the funds

---

[1] First Response served the Affidavit within 120 days of its last day of work. (ECF No. 21, PageID 183, 187–91.)

remaining in the contract with the principal contractor, an amount, up to the balance remaining in the contract, that does not in the aggregate exceed the claim or claims." Ohio Rev. Code § 1311.28. The detained funds are to be placed in an escrow account and "released at the times, in the amounts, and to the persons ordered by a court of competent jurisdiction or by agreement of the principal contractor and the subcontractor" who filed the affidavit. *Id.* Additionally, within 30 days of serving a lien affidavit on a public authority, a subcontractor must file a copy of the affidavit with the county recorder of the county where the public improvement is situated.[2] Ohio Rev. Code § 1311.29.

          1.    *Notice of Furnishing and Privity of Contract*

First Response did not serve a notice of furnishing on Fathom; the parties disagree about whether First Response was required to or whether it was "in direct privity of contract" with Fathom. *See* (Mot. PageID 213–14; Opp. PageID 596–97; Reply PageID 964–66); Ohio Rev. Code § 1311.261. The City argues that First Response's claim "fails from the outset because it failed to meet the procedural requirements of the statute." (Mot. PageID 214.)

In support of its argument, the City asserts that First Response has failed to offer evidence that it entered into a contract with "Global Water Management, LLC," and instead offers invoices from First Response to "Fathom Water Management, Inc.," a different entity. (*Id.*) First Response counters that "the

---

[2] First Response filed the Affidavit with the county recorder within 30 days of serving the Affidavit. (ECF No. 21, PageID 184.)

7

affidavits of claim and Schaffer's deposition testimony prove direct privity existed between [First Response] and Fathom." (Opp. PageID 596–97.)

In fact, a subcontractor agreement between Global Water Management, LLC (or "Fathom") and First Response was filed on the record by counsel for the City.[3] (ECF No. 45-1.) While it was filed after First Response's opposition brief, the Court "may consider other materials in the record" in addition to cited materials. Fed. R. Civ. Pro. 56(c)(3).

Privity of contract exists; the City's first argument is without merit.

    2.    *Lien Attachment*

Next, the City argues that First Response's lien claim fails because nothing was owed or became due to Fathom when First Response filed its lien or thereafter. (Mot. PageID 214.) Thus, the City contends the lien did not attach and First Response has no right to recovery. (*Id.*)

"Timing is everything" when evaluating a lien claim under Ohio's statute. In *L.E. Myers Co., High Voltage Sys. Div. v. Jordano Elec. Co.*, the Tenth District Court of Appeals of Ohio explained:

> In [*Lee Turzillo Contracting Co. v. Cincinnati Metro. Housing Auth.* 225 N.E.2d 255 (Ohio 1967)], the Supreme Court held . . .

---

[3] The City's filing of the contract between First Response and Global Water Management, LLC reveals its argument that First Response failed to "offer evidence" of that contract to be disingenuous. Counsel are reminded of their obligations under Federal Rule of Civil Procedure 11(b)(4), which states that by signing and filing papers with the Court an attorney certifies to the best of her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the denials of factual contentions are warranted on the evidence . . . ."

8

> "Section 1311.26 *et seq.*, Revised Code (in effect prior to September 30, 1963), afford a species of garnishment to protect a subcontractor, laborer or materialman against the risk of loss of payments due him should such payments reach his principal contractor in whose hands they may be subject to the creditors or caprice of the latter."
>
> . . . .
>
> "Compliance with Section 1311.26, Revised Code, constitutes a 'stop notice' to the owner by virtue of Section 1311.28, Revised Code, to prevent the payment of moneys due to the principal contractor; and a subcontractor, laborer, or materialman thereby secures an assignment pro tanto of the *moneys remaining due from the owner to the principal contractor,* with the right to control and direct its payment to himself." (Emphasis added.)
>
> As can be seen by the statutory scheme and the case law cited, the subcontractor can only put a lien on payments that the owner still owes the contractor. In the case at bar, the subcontractor (Myers) requested that ODOT put a lien on subsequent payments to the contractor (Jordano), but ODOT had already paid the contractor fully (and probably more than fully) for its performance which was not completed. This performance for which payment had already been made included work done for Jordano by Myers.

547 N.E.2d 1014, 1017 (Ohio Ct. App. 10th Dist. 1988). Or, put another way, a subcontractor cannot recover on liens filed against the owner if the owner has already paid the contractor the entire amount due before the liens are filed. *Id.* at 1018; *see also State ex rel. Gen. Elec. Supply Co. v. Jordano Elec. Co.*, 558 N.E.2d 1173, 1176 (Ohio 1990) ("The subcontractor, to the extent of his demand, takes the place of the contractor, so that, *if the owner, as against the latter, can withhold the payment of the moneys earned, he can do so, in like manner against the demands of the former.*") (citations and quotations omitted) (emphasis in original); *Poenisch v. Kingsley-Dunbar, Inc.,* 582 N.E.2d 1071, 1074 (Ohio Ct. App. 10th Dist. 1990)

9

("When funds are due the principal contractor, the subcontractor or materialman simply steps into the shoes of the principal contractor provided a valid lien exists.").

So the question is not whether Project funds remained in the Bank of America escrow account when First Response filed its lien (as First Response avers (Opp. PageID 598–99)); rather, it is whether the City owed Fathom any Project money at that time.

First Response has failed to show the existence of a genuine dispute over whether or not the City owed Project money to Fathom when it filed its lien. Rather, the City provided evidence that it had paid Fathom what was due or had even overpaid Fathom. When the fee schedule, pricing table, and testimony from Rick Schaffer (Director of Public Works for the City) are considered together, the City paid approximately 80% of the total implementation fee when it received Fathom's November 9 email, yet only about 70% of the Project water meters had been installed and software installation, training, and other services related to the Project had not been completed. (ECF Nos. 27-1, 27-2, PageID 268; Schaffer Aff. ¶¶ 1, 2, 18.)

In response to that evidence, First Response points to the fact that the City did not pay Fathom's eighth invoice. (Opp. PageID 599.) While true, that fact alone is not evidence that the monies invoiced had been earned by Fathom.

First Response also cites portions of Mr. Schaffer's deposition testimony to argue that monies were still owed to Fathom. However, that testimony focuses on a spreadsheet that Jason Bethke (Fathom's President and Chief Growth Operator)

had shared with the City to "try[] to convince the city that [it] should make further payments to them." (Schaffer Dep. 68:7–15; 69:4–71:20, ECF No. 40; ECF No. 27-3, PageID 287.) Mr. Schaffer testified that his impression of the spreadsheet was that "it was creative" because "Fathom had tried to change the value of the products and services he was providing from the way it was done in the [request for proposal]." (Schaffer Dep. 71:1–8.) This testimony does not create a genuine issue of fact as to whether the City owed Fathom money in March 2020.

In sum, there is no evidence by which a jury could find that there were funds due to Fathom for the lien to attach when First Response filed its lien. Accordingly, First Response has no right to recovery. Summary judgment is **GRANTED** to the City on Count I.

### B.     Unjust Enrichment (Count II)

First Response also brings an unjust enrichment claim against the City, but unjust enrichment and quasi-contract claims may not be sustained against municipal corporations. *See e.g., G.R. Osterland Co. v. Cleveland*, 748 N.E.2d 576, 578 (Ohio Ct. App. 8th Dist. 2000) ("the doctrine of unjust enrichment does not apply to a municipal corporation"); *Wright v. Dayton*, 814 N.E.2d 514, 520 (Ohio Ct. App. 2nd Dist. 2004) ("a claim may not be sustained against a municipal corporation upon theories of implied or quasi-contract"); *Cleveland v. Vill. of Marblehead*, No. OT-00-018, 2001 WL 279763, at *2 (Ohio Ct. App. 6th Dist. Mar. 23, 2001) ("Because implied or quasi contracts, by definition, do not meet the requisite formalities to form a binding agreement with a municipality, the municipality may

not be held liable under those theories of recovery."). The City is a municipal corporation, so First Response's unjust enrichment claim fails.

Summary judgment is **GRANTED** to the City on Count II.

## V.  CONCLUSION

For the reasons set forth above, the City's Motion for Summary Judgment (ECF No. 26) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**